## SIMPSON et al. v. COUNTY BOARD OF APPEALS FOR MONTGOMERY COUNTY et al.

[No. 28, September Term, 1958.]

*Decided November 19, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND and HORNEY, JJ., and HENRY, J., Chief Judge of the First Judicial Circuit, specially assigned.

*David Macdonald* for the appellants.

*Rourke J. Sheehan, Assistant County Attorney for Montgomery County,* with whom was *Alfred H. Carter, Acting County Attorney,* on the brief, for the appellee, Montgomery County.

*Edward S. Northrop,* with whom were *Arthur G. Lambert* and *Walter S. Furlow, Jr.,* on the brief, for the appellee, North Chevy Chase Swimming Pool Association, Inc.

HORNEY, J., delivered the opinion of the Court.

The County Board of Appeals of Montgomery County (the

Board of Appeals *or* board) granted the North Chevy Chase Swimming Pool Association, Inc., (the association *or* proponents) a special exception to construct and operate a community swimming pool over the objections of Percy S. Simpson and others (the protestants). The protestants appealed to the Circuit Court for Montgomery County. The court heard the appeal on the record (including exhibits) made before the board, dismissed the appeal and affirmed the decision of the Board of Appeals. The protestants have appealed to this Court from the order of the circuit court.

The proposed site of the pool is located in a zone classified as R-90 [1] under the zoning ordinance applicable to that portion of the Maryland-Washington Regional District in Montgomery County. The association is the owner of a tract of land containing 2.5988 acres situated in the suburban area of Chevy Chase, on the east side of Brierly Road immediately north of the dead-end of Walnut Hill Road, in the heart of a residential area of single-family homes worth from $26,000 to $40,000. There are homes immediately east and south of the proposed pool and the west side of Brierly Road—directly across the street from the pool site—is fully developed. There are also homes directly south of the pool site on both sides of Walnut Hill Road. Many of the protestants are adjacent property owners and all own homes in or near the area described herein.

The association is a private, non-profit, membership corporation, which was incorporated for the purpose of constructing and operating a swimming pool and other related facilities. The by-laws require members to pay an initiation fee of $220 or $260, depending on when they apply for membership, plus annual dues to be fixed by the board of directors.

Section 107-27a of the Montgomery County Code (1955) adopted December 15, 1953, by Ordinance 2-125, provides in part that a special exception may be granted when it is found the proposed use does not affect adversely "the general plan for the * * * district" and "the health and safety of [the]

---

1. In Montgomery County a one family, detached, restricted residential zone is designated as an "R-90 Zone."

residents or workers in the area," and that such use "will not be detrimental to the use or development of adjacent properties or the general neighborhood," provided the standards for each use have been met. Subsection b [of § 107-27] places the "burden of proof," the "burden of going forward with the evidence" and the "burden of persuasion on all questions of fact" on the applicant. The uses for which special exceptions may be granted under the provisions of § 107-27 a and b, *supra, with the exception of community swimming pools,* are set forth in § 107-28 a through kk.

Section 107-28dd [now § 107-28z-4], relating to community swimming pools, adopted May 24, 1955, by Ordinance 3-28, entitled "Swimming pool, community"—the section with which we are primarily concerned—specifically provides that the provisions of § 107-27, *supra,* shall not apply. Section 107-28dd, *supra,* further provides that a special exception may be granted in any zone for a community swimming pool "upon a finding by the board that such use will not affect adversely the present character or future development of the surrounding residential community." Under this section, use as a swimming pool must also conform to certain minimum requirements, including the set-back of the pool from property lines, the availability and use of the public water supply, and the screening of the pool from view from the nearest property by means of a wall, fence or shrubbery. Special conditions—such as off-street parking, additional fencing, planting and landscaping, additional set-backs, location and arrangement of lighting, and financial responsibility—are also required when necessary to safeguard "the general community interest and welfare."

Apparently the County Council had a dual purpose in adopting a more liberal ordinance with regard to the granting of a special exception for community swimming pools. The "opinion" recorded in the ordinance journal recognizes the public need for community swimming pools as well as the necessity of protecting the present character and future development of the surrounding community. The journal also indicates that the council intended that adjacent property owners in the "surrounding community" should be further

protected by requiring that certain special conditions be met —in addition to the usual minimum requirements—before the special exception is granted. It appears, however, that the burden of proof and other burdens prescribed by § 107-27b, *supra,* may have been shifted from the proponents to the protestants.

Other than what appears in the opinion of the Board of Appeals and a brief reference thereto in the court's memorandum opinion, we are unable to determine the exact nature or extent of the testimony taken by the board concerning the adverse affect of a community pool on the residential properties in the surrounding community. The only oral testimony printed in the record extract which we may consider is an excerpt from the transcript of proceedings before the board when a witness for the proponents was called to testify as to whether adjacent properties would be appreciated or depreciated in value as a result of the construction of a community pool. The chairman of the board stated that they were not interested "in the effect on immediate adjacent properties," but would hear testimony as to "the detrimental effect on the surrounding community." We were informed at the oral argument that when the board refused to receive the testimony of the witness referred to, the protestants made no effort to introduce into the evidence or to proffer any testimony as to how or why their properties would be adversely affected or in what manner the protestants would be damaged. The board heard testimony concerning the probable increase of traffic in the area, the desirability of keeping "open" the land proposed to be used as the site of the pool, and the oral and written proposals or protests of numerous property owners in the area for or against the granting of a special exception. At the end of the hearing the board found the requirements of the ordinance had been satisfied and granted the special exception, but imposed certain special conditions to safeguard the "interest and welfare" of the "general community."

In this Court the protestants raise only two questions, both of which concern the constitutionality of § 107-28dd, *supra.*

One question relates to the denial of due process; the other to the denial of the equal protection of the laws.[2]

## (i). Due Process.

The protestants contend that § 107-28dd, *supra,* is an invalid delegation of police power to the board because the words "surrounding residential community" are too uncertain and indefinite to be a proper standard for the exercise of such power. The ordinance prescribes that the proposed use shall not "affect adversely the present character or future development of the surrounding residential community," the last three words of which define the geographical area in which the proposed standard is applicable. A similar provision in the Montgomery County Code (1950), Ch. 176 § 13g, concerning "neighboring properties and the general neighborhood," was construed by this Court in *Montgomery Co. v. Merlands Club,* 202 Md. 279, 96 A. 2d 261 (1953). The protestants concede that the standard for a special exception for all permissible uses—other than for a community swimming pool—prescribed by § 107-27, *supra,* which might affect "adjacent properties or the general neighborhood," is valid by virtue of the decision in the *Merlands* case. But in the instant case, the protestants insist' that the standard which requires the board to find whether the proposed use for a community swimming pool will adversely affect the present character or future development of the "surrounding residential community," is not only uncertain and indefinite, but is "an unknown quantity."

The validity of the zoning ordinance in controversy, which designates a geographical basis for testing a special exception for a community swimming pool different from the geographical basis for all other permissible uses in the same residential zone, though raised in the lower court, need not be decided here. We decline to do so because there is no *evidence* to show that any of the protestants owning adjacent properties were affected otherwise than the owners of other properties in

---

2. Evidently the reference is to the XIVth Amendment of the Constitution of the United States.

the general neighborhood. Other than certain generalizations contained in several protests voicing the adverse affect on the adjacent residential community, there is nothing in the record to show how or why the granting of the special exception would be to the disadvantage of the protestants or in what manner they would be damaged. They are, therefore, without standing to raise the constitutional question of the denial of due process. One of the elementary doctrines of constitutional law is that the constitutionality of a legislative act may be attacked only by a person who is able to show he has an interest which is or may be infringed by the application of the law objected to. 11 Am. Jur. *Constitutional Law* § 111; 16 C. J. S. *Constitutional Law,* § 76a.

In *Headley v. City of Rochester,* 272 N. Y. 197, 5 N. E. 2d 198 (1936), it was said at p. 201: "A statute cannot have the effect of depriving a person of his * * * property unless it * * * diminishes the enjoyment or profit which he would otherwise derive from his property." Stated otherwise, the constitutionality of a statute or ordinance cannot be challenged by a person whose rights are not adversely affected. *Atkinson v. Sapperstein,* 191 Md. 301, 60 A. 2d 737 (1948). See also *Chicago Board of Trade v. Olsen,* 262 U. S. 1 (1923); *Steel Co. v. Equitable Society,* 113 Md. 77, 77 A. 255 (1910), aff'd 226 U. S. 455 (1913); *Bettendorf Co. v. Field,* 114 Md. 487, 79 A. 724 (1911); *Hammond v. Lancaster,* 194 Md. 462, 71 A. 2d 474 (1950), *motion for stay of mandate denied* 339 U. S. 908 (1950); *Hammond v. Frankfeld,* 194 Md. 487, 71 A. 2d 482 (1950); *Village of Itasca v. Luehring,* 4 Ill. 2d 426, 123 N. E. 2d 312 (1954); *Wofford v. City of Gainesville,* 212 Ga. 818, 96 S. E. 2d 490 (1957). *Accord Kimberly v. Town of Madison,* 127 Conn. 409, 17 A. 2d 504 (1941). Moreover, the burden of proof is upon those who claim they are injured to show how, as to them, the statute or ordinance is unconstitutional. *Massachusetts v. Mellon,* 262 U. S. 447 (1923).

### (ii). Equal Protection.

The protestants further contend that § 107-28dd, *supra,* is unconstitutional in that it is a denial of the equal protection of

the laws. They claim that the section is discriminatory and therefore invalid because it provides that the provisions of § 107-27, *supra,* are inapplicable to a special exception for a community swimming pool. The protestants insist that an owner and operator of a community swimming pool enjoys a favored status and special treatment not accorded to other uses specified in § 107-28, *supra,* for which special exceptions may also be granted if the more rigid standards therein provided are not thereby violated. Since none of the protestants is an applicant for a special exception for any of the other uses specified in § 107-28, *supra,* it is clear that they have no standing to assert that the section in controversy discriminates against others. Those who are not affected by an alleged discrimination in an ordinance have no standing to question the validity thereof as discriminatory. *Jos. Schlitz Brewing Co. v. Milwaukee,* 232 Wis. 118, 286 N. W. 602 (1939). The constitutional guaranties of equal rights and privileges are for the benefit of those whose rights are directly affected or prejudiced, and no other person may take advantage thereof. *State ex rel. Linde v. Taylor,* 33 N. D. 76, 156 N. W. 561 (1916). See also *Hendrick v. Maryland,* 235 U. S. 610 (1915), and *Monamotor Oil Co. v. Johnson,* 292 U. S. 86 (1934).

For the reasons herein expressed, the order of the lower court must be affirmed.

*Order affirmed, the appellants to pay the costs.*